# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM OZAH, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. CCB-18-605 |
| MICHAEL MERICAN,[1] | * | |
| Defendant | * | |

\*\*\*

## MEMORANDUM OPINION

In response to the above-titled civil rights complaint, Defendant Michael Merican filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.[2] ECF 13. Plaintiff was advised of his opportunity to oppose the motion (ECF 14) but has not done so.[3] The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6. For the reasons that follow Defendant's motion, construed as a Motion for Summary Judgment, shall be granted.

---

[1] The Clerk shall amend the docket to reflect the correct name of Defendant.

[2] Defendant's Motion for Extension of Time to Respond to the Complaint (ECF 11) is granted nunc pro tunc.

[3] Plaintiff's Motion to Appoint Counsel (ECF 15) which is opposed by Defendant (ECF 16), shall be denied. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it[.]" *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). Plaintiff has demonstrated the wherewithal to articulate the legal and factual basis of his claims. The issues presented are not unduly complicated. Simply stated, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under §1915(e)(1). Moreover, as discussed below, Plaintiff failed to exhaust his administrative remedies and the Complaint is therefore subject to dismissal.

## Background

In his unverified Complaint, Plaintiff William Ozah, alleges that in March of 2015, while a pretrial detainee in the St. Mary's County Detention Center ("SMCDC"), he was attacked by inmates Jamarr Sherman Mackall and Deionte William Johnson while he slept. ECF 1 at p. 7. Mackall and Johnson punched, kicked, and beat Plaintiff for several minutes. Plaintiff yelled for assistance to the housing unit officers who after "some time" responded to Plaintiff's cell and ended the assault. *Id.* Plaintiff filed a supplemental complaint attaching the incident reports and criminal charges which were generated as a result of the assault on him. ECF 3.

As a result of the attack, Plaintiff suffered injuries to his head, back, face, and chest. He alleges that he continues to suffer from post-traumatic stress disorder, migraine headaches, and loss of vision. ECF 1 at p. 7. Additionally, Plaintiff claims that after the assault he requested unnamed officials at the detention center take him to the hospital, but they failed to do so. ECF 1 at p. 7.

Plaintiff states that Captain Merican is responsible for "managing the daily operation of" SMCDC. ECF 1 at p. 4. He also claims that Captain Merican is responsible for setting the policies of the detention center and "[i]t should be the policy of the St. Mary's County Detention Center to keep separated those inmates which are sentenced to a term of imprisonment, from those awaiting to go to trial." ECF 1 at p. 5. Plaintiff claims that Merican's negligence permitted the two convicted inmates to be housed with him, a pretrial detainee. *Id.* He further alleges that Merican "failed in his duties to properly screen the sentencing status of all the inmates before assigning them to a housing unit" and Merican should have been aware that Mackall and Johnson were waiting to be sentenced for prior assaults that occurred at the detention center. *Id.*

Lastly, Plaintiff states that he did not file an administrative grievance regarding the matters alleged, as "it was not made known to [him] that there was a grievance process available to inmates housed" at the detention center. ECF 1 at p. 6.

Merican explains that SMCDC has an inmate grievance policy which is set forth in the Inmate Guidebook. ECF 13-4, ¶ 3 (Merican Affidavit); ECF 13-5, p. 8 (Inmate Guidebook, p. 23, IX Inmate Rights and Privileges, G. Grievance). The policy provides that all inmates have the right to present complaints/grievances regarding SMCDC policies, procedures, rules, regulations and practices. *Id.* The grievance policy directs that efforts will be made to informally resolve matters. If informal resolution is unsuccessful the inmate may then file a formal grievance by submitting an Inmate Grievance Form to a correctional officer who is tasked with forwarding the grievance to the proper authority for resolution. *Id.* Complaints against staff are to be forwarded to the Commander of SMCDC. *Id.* Upon receipt of a formal grievance, staff are required to investigate, and when necessary, to form a Grievance Committee to resolve the grievance in accordance with established policies and procedures. *Id.* Inmates must be advised of the findings and actions taken to resolve the grievance within 15 working days. *Id.* If the inmate is dissatisfied with the result of the investigation, the inmate may, within three working days of receipt of the result, file a written appeal directly to the Commander. *Id.*

All inmates, whether pretrial detainees or convicted prisoners, upon entering SMCDC, receive an initial briefing which includes an explanation of the grievance process. ECF 13-4, ¶ 4. Additionally, a video is shown to the inmates which explains the grievance process and the availability of the Inmate Guidebook which contains the grievance process. *Id.* The video advises inmates that the Guidebook is available throughout the detention center including in holding cells or dayrooms of each housing unit and that copies may be obtained from the correctional officer on

duty. *Id.* The video is replayed for the inmates every morning. ECF 13-4, ¶ 5. All inmates are required to acknowledge that they have received this initial briefing, including explanation of the grievance process and the availability of the Guidebook. ECF 13-4, ¶ 4. Plaintiff was booked and processed at SMCDC as a pretrial detainee on October 2, 2014. ECF 13-4, ¶ 6; ECF 13-8 (Booking Report). As part of his processing, he received the initial briefing, was shown the video, and signed a written acknowledgement of same. *Id.*

During his incarceration at SMCDC, Plaintiff did not file any grievances regarding security or medical issues. On November 14, 2014, he filed an inmate request form complaining that he had not received a response to a grievance he filed on November 1, 2014. ECF 13-15 (Inmate Request Form). On March 17, 2015, he filed an inmate request form regarding funds in his inmate account. ECF 13-14 (Inmate Request Form). He filed a formal grievance on February 13, 2015, concerning his commissary balance. ECF 13-16. (Inmate Grievance). On April 13, 2015, he filed an inmate request regarding his mail log. ECF 13-13 (Inmate Request Form).

Plaintiff was transferred from SMCDC on June 13, 2016. ECF 13-4, ¶ 10; ECF 13-11 (Inmate Transfer Alert).

## Standard of Review

Defendant has filed his Motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). To the extent that grounds for dismissal are based solely on the contents of the complaint, the Court may dismiss under Rule 12(b)(6) if the complaint does not allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is

plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment when matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some indication that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement has been satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d), or otherwise put the district court on notice of the reasons why summary judgment is premature, *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). Here, Plaintiff has not filed a Rule 56(d) affidavit or otherwise requested discovery in this matter. Under these circumstances, the Court will construe Defendant's Motion as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## I.  Exhaustion of Administrative Remedies

Defendant raises the affirmative defense that Plaintiff has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. 1997(e)(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2018). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). Thus, the PLRA's exhaustion requirement applies to actions brought by pretrial detainees. *United States v. Al-Marri*,

6

239 F.Supp.2d 366, 367-68 (S.D.N.Y. 2002) (dismissing pretrial detainee's civil rights complaint for failure to exhaust administrative remedies); *Tate v. Anderson*, 2007 WL 28982 * 4 (D. S.C. 2007) (holding PLRA's exhaustion requirement applies in actions brought by pretrial detainees). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F. Supp.2d 523, 530 (D. Md. 2003); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief").

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp.2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now

7

mandatory."). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross* v. *Blake,* 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Bennette,* 517 F.3d at 725. In *Ross,* the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross,* 136 S. Ct. at 1859-60.

Defendant and Plaintiff agree that Plaintiff did not begin, much less exhaust, administrative remedies prior to initiating this suit. Plaintiff, who failed to respond to Defendant's dispositive motion, does not dispute his failure to institute the ARP process to resolve the claims he presents in this case. While Plaintiff alleged in his unverified Complaint that he did not file an ARP about his claim because he was not aware that such a process existed, his claim is belied by the record evidence which shows that Plaintiff signed a written acknowledgement that he was made aware of the inmate grievance process when he was booked into SMCDC and that during his incarceration at SMCDC he utilized the process.

Because exhaustion must be completed through each phase of the administrative process, and Plaintiff has offered no plausible claim that administrative remedies were unavailable to him, the Court will grant Defendant's Motion for Summary Judgment.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is GRANTED. Judgment will be entered in favor of Defendant. A separate Order follows.

2/21/19
Date

/s/ Catherine C. Blake
United States District Judge